**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**
**CASE NO. 7:09-cv-00144-KKC**
**(Electronically Filed)**

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS UNION, AFL-CIO-CLC | PLAINTIFF |
| v.    **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** | |
| AMERICAN STANDARD CORPORATION | DEFENDANT |

* * * * *

Defendant, American Standard Corporation ("American Standard or Defendant"), by counsel, offers this memorandum of law in support of its motion to dismiss the Complaint of Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO-CLC ("the Union").

## I.    INTRODUCTION

The Union brings an action under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), ostensibly for specific performance of the Union's collective bargaining agreement ("CBA") with American Standard. (Complaint ¶ 1, dkt#1.) Specifically, the Union asks this Court to compel arbitration of a dispute over separation pay pursuant to the closure of American Standard's Paintsville, Kentucky facility. In the alternative, the Union seeks an award of separation pay. (Complaint ¶ 1, Prayer for Relief ¶ 2, dkt#1.)

The Complaint fails to state a claim for relief. Any obligation to arbitrate stems solely from the CBA, but it expired on June 30, 2008; the dispute over separation pay did not arise until after that. By its terms, the CBA did not provide for the separation pay provision to remain in

force following its expiration. Therefore, under well-settled law, American Standard cannot be compelled to arbitrate the separation pay dispute.

Moreover, the Union's claims are solely based on an alleged violation of LMRA Section 301, which only provides a cause of action for an alleged *contract* violation between an employer and a union. Because the CBA indisputably expired, and the separation pay provision at issue did not survive expiration of the CBA, the Union has no cause of action for a contract violation. Having failed to state a claim upon which relief can be granted under LMRA Section 301, the Union's Complaint should be dismissed.

## II. FACTUAL BACKGROUND

### A. THE PARTIES ENTER INTO A CBA.

On June 30, 2005, American Standard and the Union entered into the CBA, which "set forth … rates of pay, hours of work, and conditions of employment to be observed between the parties hereto…." (CBA Article I, Purpose and Intent of the Parties, Section 1.01; Complaint, Exhibit A). The CBA provided a "procedure for prompt, equitable adjustments of alleged grievances so that there shall be no interruptions or impeding of the work, work stoppages or strikes, lockouts, or other interference with production." (*Id.*)

### B. THE PARTIES AGREED THAT THE CBA WOULD EXPIRE AFTER MIDNIGHT ON JUNE 30, 2008.

The CBA was not intended to last forever. It contained provisions explicitly limiting its duration:

> This agreement shall be in force from July 1, 2005, without modification or addition for its duration to 12:01 a.m., to [sic] July 1, 2008 unless amended by mutual agreement.

> Thereafter, it shall continue in force until sixty days subsequent to notification by registered mail by either party to the other party, but in no case shall terminate prior to the date indicated above.

(CBA Article XLII, Duration, Section 42.01; Complaint, Exh. A, p. 37). The same CBA article expressly limiting its duration *also* provided separation pay for employees "in the event [American Standard] permanently and totally discontinue[s] operation of the plant [located in Paintsville, Kentucky]." (CBA Article XLII, Duration, Section 42.02; Complaint, Exh. A, p. 37).

    C.    **AMERICAN STANDARD ANNOUNCES THE CLOSING OF ITS PAINTSVILLE PLANT AND BARGAINS WITH THE UNION OVER THE EFFECTS OF THE CLOSURE.**

Under the terms of the Union's April 18, 2008 notice to American Standard, the CBA was set to "terminate in accordance with its provisions as of <u>June 30, 2008</u>." (Exhibit 1, Union April 18, 2008 letter; emphasis in original.) Prior to the CBA's expiration, American Standard announced that it would be closing its Paintsville facility, notifying the Union of that decision. (Complaint ¶ 9.) American Standard and the Union subsequently began bargaining over the effects of plant closure. (*Id.*) During these negotiations, the parties disagreed over the Company's obligation to provide certain subsidized retiree health benefits; the Union filed a grievance over this issue on June 23, 2008.

Bargaining continued through the June 30, 2008 CBA expiration date, with the parties unable to reach agreement. (*Id.*) When bargaining resumed on September 23, 2008, the parties exchanged offers concerning the effects of plant closure. The Union rejected American Standard's offers, prompting American Standard to withdraw all proposals, offering instead to extend the existing terms and conditions of the expired CBA *but excluding any provision for separation pay*.

Rather than providing the Company with a counter-offer, the Union instead filed a grievance alleging that American Standard refused to provide employees with separation pay as provided for in the CBA.[1] (Complaint ¶ 11; Exh. B thereto, September 26, 2008 Separation Pay Grievance.) On October 10, 2008, American Standard wrote the Union, reminding it of its failure to respond to the Company's latest proposal, and inviting the Union to make a counter-offer, or to meet with Company negotiators. (Exhibit 2, Company October 10, 2008 letter to the Union.) The Union did not respond with any counter-proposal, nor did it meet with Company negotiators.

Later that month (October 2008), and consistent with American Standard's September 23, 2008 offer to the Union which specifically excluded separation pay, American Standard closed the Paintsville facility. (Complaint ¶ 12.) Upon discharge, none of the Union bargaining unit employees received separation pay. (*Id*.)

### D. THE UNION FAILS TO OBTAIN RELIEF FROM THE NATIONAL LABOR RELATIONS BOARD ON THE SEPARATION PAY ISSUE.

In addition to the grievances over the health insurance issue and separation pay, the Union filed unfair labor practice charges with the National Labor Relations Board on September 30, 2008 (Case No. 9-CA-44630) and October 29, 2008 (Case No. 9-CA-44667). (Exhs. 3 and 4, respectively.) The first charge alleged that the Company: 1) insisted upon permissive subjects of bargaining; 2) threatened to withdraw or refuse to pay accrued employee benefits; and 3) threatened to unilaterally implement changes to terms and conditions of employment, all in violation of NLRA Sections 8(a)(1) and (5). The second charge alleged that,

---

[1] At the time the Union filed the separation pay grievance, the plant had not closed and no employee was due any separation pay.

by eliminating separation pay, the Company made unilateral changes to terms and conditions of employment, in violation of NLRA Sections 8(a)(1) and (5).

The Company responded to both charges, noting the parties' bargaining history and benefits documentation. The NLRB's investigation obviously found no merit to the Union's claims, as the NLRB Regional Director approved the Union's unilateral withdrawal of both charges on November 25, 2008. (Exh. 5, letter from NLRB.)

Unable to prevail against the Company before the NLRB, the Union has now filed this lawsuit against American Standard attempting to force arbitration over separation pay, an issue which arose long after the CBA expired.

**III. ARGUMENT**

    **A. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

In two recent decisions, the United States Supreme Court addressed Rule 12(b)(6) complaint pleading requirements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937 (2009). The Supreme Court held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original). *See also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625 (6th Cir. 2009). The Supreme Court emphasized that there must be sufficient factual allegations in the complaint "to raise a right to relief above the speculative level," and that "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555-56 (internal quotes

5

omitted).  Here, the Union's Complaint has failed to meet these standards, and should be dismissed.

### B. AMERICAN STANDARD HAS NO CONTRACTUAL OBLIGATION TO ARBITRATE A DISPUTE THAT AROSE FOLLOWING EXPIRATION OF A COLLECTIVE BARGAINING AGREEMENT.

"Arbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration unless it has agreed to do so." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986).  "In determining whether the parties have agreed to submit a dispute to arbitration, the Court may not consider the potential merits of the underlying claims …" *Int'l Brotherhood of Teamsters v. Pepsi-Cola General Bottlers, Inc.*, 958 F.2d 1331, 1333 (6th Cir. 1992).  With respect to an expired CBA, "the Court must determine whether the parties intended to arbitrate the dispute, even if it requires the Court to interpret a provision of the expired agreement."  *Id*. (citing *Litton Financial Printing Div., Inc. v. NLRB*, 501 U.S. 190 (1991)).

The United States Supreme Court has long recognized, in the context of collective bargaining agreements, that "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied."  *Litton*, 501 U.S. at 206.  Thus, a party is required to arbitrate a post-expiration grievance only where the grievance arises under the contract.  *Pepsi-Cola*, 958 F.2d at 1334.

> A post-expiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Litton Financial Printing Div., Inc. v. NLRB*, 501 U.S. 190, 205-06 (1991).  Only where these criteria are met must the parties arbitrate the dispute.

1. **No Fact Or Occurrence Arising Prior To The CBA's Expiration Triggered A Dispute Over Separation Pay.**

The Complaint does not point to a single fact or occurrence prior to the CBA's expiration which triggered a dispute over the separation pay issue. The Union concedes that the CBA expired on June 30, 2008. (Complaint ¶ 9). It also concedes that the separation pay dispute did not arise between the parties until September 23, 2008 (*Id.* ¶ 10), nearly three months after the CBA expired. And it is undisputed that the plant did not close until October 2008, well after the CBA expired. (*Id.* ¶ 12). Thus, there was no fact or occurrence prior to the CBA's expiration giving rise to a contract violation claim.

2. **No Fact Or Occurrence After Contract Expiration Infringed Upon A Right That Accrued Or Vested Under The CBA.**

"Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." *Pepsi-Cola*, 958 F.2d at 1334 (internal quotation marks omitted). But that is so only "**if the agreement provides in explicit terms that certain benefits continue after the agreement's expiration.**" *Id*. (emphasis added). Here, aside from a fleeting reference to "vested severance benefits" sought in this case (Complaint ¶ 1), the Complaint merely alleges that "the Company announced its intention not to pay severance at shutdown" and "refused to pay severance to its employees." (*Id.* ¶¶ 10,12). The Union fails to allege facts supporting a conclusion that severance is a right that accrued or vested under the CBA and survived its termination. Instead, the facts alleged lead to the opposite conclusion. It cannot be disputed that the CBA provided for separation pay only in the event of a total plant shutdown. (*Id.* ¶ 8, Exh. A, p. 38). And the plant did not shut down until several months *after* the CBA expired. (*Id.* ¶¶ 9,12). American Standard's employees simply had no right to separation pay prior to expiration of the CBA, and thus no right to such pay could have accrued or vested under the CBA.

Moreover, no term in the CBA provides -- explicitly or implicitly -- that the separation pay clause survived its expiration.[2] Rather, the CBA itself unequivocally demonstrates that the separation pay provision expired on June 30, 2008 with the rest of the contract. The parties placed the separation pay provision in Article XLII (42) of the CBA, entitled "Duration." (Complaint, Exh. A, pp. 37-38.) Article XLII "Duration" contains two sections, 42.01 and 42.02. Section 42.01 plainly states that "this Agreement shall be in force from July 1, 2005, without modification or addition for its duration to 12:01 a.m., to [sic] July 1, 2008, unless amended by mutual agreement." (*Id.*) Section 42.02 plainly states that certain employees receive separation pay in the event of a total plant shutdown. (*Id.*).

These two provisions must be read together. By including the separation pay provision in the CBA article limiting its "Duration," the parties must have intended the separation pay provision to be subject to those temporal limitations. It simply defies reason to suggest that, in doing so, the parties intended the *opposite* result. Indeed, including the separation pay provision in the CBA article specifying its duration is an inherently illogical means to provide employees with a vested benefit regardless of when the contract expires, and regardless of whether any new CBA or plant closing agreement was negotiated by the parties.

Finally, in *Pepsi-Cola*, the court refused to compel arbitration under similar circumstances. There, following expiration of a collective bargaining agreement, a union employee engaged in conduct resulting in his termination. *Pepsi-Cola*, 958 F.2d at 1332. The Union sought arbitration over whether the termination was for just cause, as required by the then-

---

[2] Although not critical to this analysis, it is noteworthy that the Union was placed on notice of the pending plant shutdown. The Union understood that the shutdown would occur after the CBA expired, and had every opportunity to bargain for a contract extension which would have included separation pay. In fact, the Company made such an offer, which the Union rejected. The Union now seeks to avoid the consequences of its failed bargaining strategy by attempting to compel American Standard to arbitrate over an expired contract provision.

expired agreement, but the company refused. *Id*. at 1333. Just as here, the union asked the court to compel arbitration. *Id*. The Sixth Circuit refused to compel arbitration, stating that "the collective bargaining agreement does not explicitly provide that the right to be discharged only for just cause survives termination of the agreement." *Id*. at 1334. Because the contract had expired at the time of the events giving rise to the employee's termination, he had no contractual right to be terminated only for just cause, and thus no contractual right to arbitrate his dismissal.

There is little substantive difference between this case and *Pepsi-Cola*. Both involve an alleged contractual right triggered by a single event. In *Pepsi-Cola*, the employee could only be terminated for just cause, a contractual right triggered only if an employee was terminated. Here, employees were eligible for separation pay, a contractual right under the CBA triggered only if the plant closed. Just as in *Pepsi-Cola*, the occurrence that triggered the alleged right -- plant closing -- occurred after the contract expired. And just as in *Pepsi-Cola*, this Court should refuse to require the parties to arbitrate the issue.

### 3. Under Normal Principles Of Contract Interpretation, The Separation Pay Benefit Does Not Survive Expiration Of The CBA.

The Union's claim presupposes that the CBA provides employees with a perpetual right to separation pay upon plant closing, even if the closing occurred well after the CBA containing that right expired. "Courts are reluctant to interpret contracts providing for some perpetual or unlimited right unless the contract clearly states that it is the intention of the parties." *William B. Tanner Co. v. Sparta-Tomah Broadcasting Co.*, 716 F.2d 1155, 1159 (7th Cir. 1983). The parties here did not clearly state that the CBA's separation pay provision creates a perpetual or unlimited right to separation pay. In fact, the parties' inclusion of the separation pay provision into the CBA article limiting the contract's duration expressly limits the temporal scope of the separation pay obligation.

9

Moreover, the CBA's separation pay provision clearly creates a condition precedent to any duty by American Standard to provide employees with separation pay.

> A condition precedent in a contract … must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies. A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or contractual duty arises.

13 Richard A. Lord, *Williston on Contracts* §38:7 (4th ed. 2000).

It is undisputed that the condition precedent here, total plant closure, did not occur during the term of the CBA. Thus, no contractual duty to perform arose and no contractual right to such benefit survived the CBA's expiration.

### C.  ABSENT AN ENFORCEABLE CONTRACT, THE UNION HAS NO VIABLE LMRA SECTION 301 CLAIM, THUS FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Union's Complaint is entirely premised upon an alleged breach of contract in violation of LMRA Section 301. (Complaint ¶ 2.) An essential element of such a claim is the existence of an enforceable collective bargaining agreement. *See, e.g., Winnett v. Caterpillar, Inc.*, 553 F.3d 1000 (6th Cir. 2009) (dismissing LMRA Section 301 claim where alleged contractual obligation did not vest before occurrence of condition precedent, in that case retirement). Because the CBA at issue here expired, and the separation pay provision thus did not survive, there is no contract violation and consequently no viable LMRA Section 301 claim. Absent a contractual obligation, the Union simply fails to state a claim upon which relief can be granted under LMRA Section 301.

### IV.  CONCLUSION

For the forgoing reasons, Defendant, American Standard, respectfully requests that the Union's Complaint be dismissed, with prejudice.

Respectfully submitted,

/s/ Brent R. Baughman
Richard S. Cleary
Brent R. Baughman
Blaine R. Blood
GREENEBAUM DOLL & McDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky  40202
Phone:  (502) 589-4200
Fax:  (502) 587-3695
Email:  rsc@gdm.com
Email:  brb@gdm.com
Email:  brb2@gdm.com

COUNSEL FOR DEFENDANT,
AMERICAN STANDARD CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following counsel of record:

Dennis F. Janes
Segal Lindsay & Janes
515 Park Avenue
Louisville, KY 40208-2318
Phone:  (502) 568-5600
E-mail:  dfjanes@segal-lawfirm.com

COUNSEL FOR PLAINTIFF

/s/ Brent R. Baughman
COUNSEL FOR DEFENDANT