UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 7:09-cv-00144-KKC

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION, AFL-CIO/CLC,                    PLAINTIFF,

v.                          **OPINION AND ORDER**

AMERICAN STANDARD CORPORATION,                               DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Dismiss filed by the Defendant American Standard Corporation. (DE 7). The issue in this case is whether a grievance over separation pay must be submitted to arbitration pursuant to an expired collective bargaining agreement. For the following reasons, the Court determines that the right to separation pay under the agreement is a vested or accrued right and, thus, any dispute over it must be submitted to arbitration.

**I.    FACTS.**

**A.    The Duration Article – Expiration and Service Pay.**

On June 30, 2005, American Standard and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (the "Union") entered into a collective bargaining agreement which covered the employees at American Standard's plant in Paintsville, Kentucky.

Article 42 of the Agreement is titled Duration and contains two provisions. The first provision states that the agreement terminates July 1, 2008 at 12:01 a.m. (DE 1, Ex. A, Agreement, § 42.01). Thus, the agreement has expired. There is no dispute about this.

The second provision in the Duration article provides for separation pay to certain workers if the plant closes, stating:

In the event [American Standard] permanently and totally discontinue[s] operation of the plant, any employee having three (3) or more years of continuous service will receive separation pay at termination in accordance with the following schedule.

| **Years of Continuous Service at Termination** | **Weeks of Separation Pay** |
| --- | --- |
| 3 but less than 5 | 3 |
| 5 but less than 7 | 4 |
| 7 but less than 10 | 5 |
| 10 but less than 20 | 10 |
| 20 Years or more | 15 |

(DE 1, Ex. A, Agreement, § 42.02)(A).

### B.  Grievances and Arbitration.

The agreement sets out a four-step process for the filing and resolution of employee grievances. (DE 1, Ex. A, Agreement, § 11). Steps 1 to 3 begin with the submission of an oral complaint by an employee to his supervisor and culminate with a written answer by American Standard.

Step 4 is the arbitration provision, stating that "[i]f the Union is not satisfied with the written answer of the Company in Step 3, it may, within five (5) calendar days of receipt of the Company's answer in Step 3, notify the Company in writing of its intention to take the grievance to arbitration." (DE 1, Ex. A, Agreement, § 11.03). The agreement provides that the arbitrator's decision is "final and binding" upon the parties. (DE 1, Ex. A, Agreement, § 11.07).

### C.  Plant Closing.

By letter sent by certified mail dated April 18, 2008, the Union gave American Standard a sixty-day notice of the expiration of the agreement. This letter stated that the, "agreement shall terminate in accordance with its provisions as of **June 30, 2008**." (DE 7, Ex. 1, Union April 18, 2008 letter).

Sometime after the letter of April 18 and before the June 30, 2008 expiration date, American Standard announced it was closing the Paintsville plant and notified the Union. American Standard and

the Union then entered into negotiations about the effects of the plant's closure and the possibility of a contract extension. (DE 1, Complaint ¶ 9).

One issue discussed in those negotiations was American Standard's obligations to pay retiree health insurance. (DE 1, Complaint ¶ 10). The Union filed a grievance over that issue on June 23, 2008. (DE 7, Motion at 3).

On September 23, 2008, American Standard offered to extend the terms and conditions of the agreement excluding the separation pay provision. (DE 1, Complaint ¶ 10; DE 7, Motion at 3). On September 26, 2008, the Union filed a grievance on the separation-pay issue pursuant to the grievance provisions of the agreement. (DE 1, Complaint, Ex. B).

By letter to the Union dated October 10, 2008, American Standard stated:

> There was a clear, irreconcilable difference in the parties' position on the separation pay issue, with the Union insisting that the employees were entitled to the pay. There was no fluidity of position at the conclusion of the negotiations on September 23 concerning separation pay and bargaining on that subject has not continued since that date. The Union has not offered any counter to the Company's position since that date. Therefore, the Company invokes its right to not provide separation pay to those employees terminated as a result of the Paintsville closure.

(DE 7, Motion, Ex. 2).

On October 15, 2008, American Standard closed the Paintsville plant. (DE 7, Motion at 4). It did not pay any employees separation pay. (DE 1, Complaint, ¶ 12; DE 7, Motion at 4).

In its Complaint, the Union states that, in February 2009, American Standard did not respond to the Union's requests to select arbitrators. By letter dated August 4, 2009, American Standard agreed to arbitrate the retiree health insurance issue but stated that it would not agree to arbitrate the separation pay grievance because "the issues therein arose after expiration of the Collective Bargaining Agreement, and following removal of that obligation after bargaining to impasse." (DE 1, Complaint, Ex. C).

In its Complaint, the Union asks the Court to order the Defendant, American Standard to submit

the separation-pay grievance to arbitration or, alternatively, to order American Standard to pay the severance benefits.

## II. ANALYSIS.

In its motion to dismiss, American Standard asserts that it has no contractual obligation to arbitrate a dispute that arose after the expiration of the agreement. In the context of an expired collective bargaining agreement like the agreement at issue in this case, the Supreme Court has held that "if a dispute arises under the contract . . . it is subject to arbitration even in the postcontract period." *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 205 (1991), In *Litton*, the Court further held that:

> A postexpiration grievance can be said to arise under the contract only where [1] it involves facts and occurrences that arose before expiration, [2] where an action taken after expiration infringes a right that accrued or vested under the agreement, or, [3] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id*. at 205-06.

The Union argues the separation pay provision falls into the second category described in *Litton* citing the Supreme Court's decision in *Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionary Workers Union,* 430 U.S. 243 (1977).

In *Nolde*, the Court was faced with the issue of whether the employer could be required to arbitrate a contractual dispute over severance pay pursuant to the agreement's arbitration clause where the dispute arose after the contract's termination. *Id*. at 244. In that case, the severance-pay provision stated that each employee employed by the company for at least three years was entitled to severance pay when the employee was permanently displaced from employment "by reason of the introduction of labor saving equipment, the closing of a department, the closing of an entire plant, or by lay off." *Id*. at 246 n. 2. After the agreement expired, the company closed the plant. *Id*. at 247. The company refused to pay severance pay or to arbitrate the dispute. *Id*.

4

The Court concluded that the dispute clearly arose under the contract because it required interpretation of the contract clause providing for severance pay. *Id*. at 249. The Court also noted that the severance-pay dispute would have undoubtedly been subject to arbitration if had arisen during the life of the contract. *Id.* at 249-50. Next, the Court noted that the contract did not exclude from arbitration a dispute that arises under the contract but is based on events that occur after its termination. *Id*. at 252-53.

The Court concluded that, '[i]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Id*. at 253. These reasons included the fact that the parties clearly expressed their preference for the expertise of a labor arbitrator. *Id.* The Court also noted the "backdrop of well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective bargaining agreements" and the "strong presumption favoring arbitrability." *Id*. at 254. The Court concluded that the parties must have known of this policy and, thus, their failure to exclude from the arbitration clause disputes arising after termination indicated an intent to arbitrate all grievances arising out of the contractual relationship. *Id.* at 255.

Thus, in concluding that the severance-pay dispute was subject to arbitration, the *Nolde* Court relied on two key facts: 1) the fact that the severance-pay dispute would have been subject to arbitration during the life of the contract, which gave rise to a presumption of arbitrability and 2) the fact that there was nothing to indicate that the parties intended to exclude the dispute from the arbitration provision after the contract was terminated. *See Litton*, 501 U.S. at 212 (J. Marshall dissenting).

There was some confusion after *Nolde* as to its proper application which the Supreme Court sought to end with its decision in *Litton*. *Id*. at 197-98. In *Litton*, the Supreme Court clarified that the *Nolde* presumption of arbitrability applies only if the dispute at issue "arises under the contract." *Id*. at 201. *See also Cincinnati Typographical Union v. Gannett*, 17 F.3d 906, 910 (6th Cir.1994); *International*

5

*Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Pepsi-Cola General Bottlers, Inc.*, 958 F.2d 1331, 1333-34 (6th Cir.1992).

The *Litton* Court further delineated how to determine if a dispute arises under the contract. Instead of simply determining that a dispute arises under the contract if it requires an interpretation of a contractual provision as the *Nolde* court had indicated, in *Litton*, the Supreme Court explained that a dispute arises under the contract if it falls into one of the three categories described above: (1) it involves facts and occurrences that arose before expiration, (2) it involves an action taken after expiration that infringes a right that accrued or vested under the agreement, or (3) it involves a contractual right that, under normal principles of contract interpretation, survives expiration of the remainder of the agreement. *Litton*, 501 U.S. at 205-06.

The *Litton* Court concluded that the contractual right at issue in that case – the right that "in case of layoffs, lengths of continuous service will be the determining factor if other things such as aptitude and ability are equal" – did not vest or accrue under the agreement and was not a contractual obligation that carried over after expiration. *Id*. at 209-10. This is because the severance pay at issue in *Nolde Bros*. was viewed as "a form of deferred compensation." *Id*. at 210. In contrast, the order of layoffs in *Litton* was to be determined primarily by factors other than seniority, such as aptitude and ability – factors that "do not remain constant, but change over time. They cannot be said to vest or accrue or be understood as a form of deferred compensation." *Id*. Thus, the Court could not " infer an intent on the part of the contracting parties to freeze any particular order of layoff or vest any contractual right as of the Agreement's expiration." *Id*.

Thus, the *Litton* Court makes clear that the dispute over severance pay at issue in *Nolde* was arbitrable after expiration because severance pay was deemed an accrued or vested right under the contract. There is no meaningful distinction between the severance-pay provision at issue in *Nolde* and the separation-pay provision at issue in this case.

American Standard argues that the separation pay provided for under its agreement is different than the severance pay at issue in *Nolde Bros.* because the right to separation pay was contingent on a condition that may not occur at all, i.e., the plant closure. However, in *Nolde Bros.*, the right to severance pay was also contingent on certain events that may or may not occur, including plant closure. The contract in *Nolde* provided severance pay to employees who were displaced from employment because of "the introduction of labor saving equipment, the closing of a department, the closing of an entire plant, or by lay off. . . ." 430 U.S. at 246 n.2.

American Standard argues that, in this case, the right to separation pay was triggered only if the plant closed and that did not occur until after the agreement expired. Thus, it argues, the right to separation pay did not accrue under the contract. (DE 7 at 7). However, the same is true for the severance pay at issue in *Nolde* where the employees were entitled to severance pay if the plant closed, 430 U.S. at 246 n. 2, and the plant did not close until after the contract was terminated. *Id*. at 247. While the fact that the plant did not close until after the contract's expiration takes the right to separation pay out of the first *Litton* category – which requires the dispute to involve facts that arose before expiration – it not mean that the right is not accrued or vested as required for the second *Litton* category.

American Standard also argues that there is no provision in the agreement that provides that the right to separation pay survives the contract's expiration. If true, then the right cannot fall into the third *Litton* category. But, again, the fact that there is no contractual provision that implicitly or explicitly provides that the right to separation pay survives the contract's expiration does not mean that the right is not accrued or vested under the agreement.

American Standard cites the Sixth Circuit's decision in *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Pepsi-Cola General Bottlers, Inc.*, 958 F.2d 1331 (6th Cir.1992). In that case, the court determined that the right to be discharged only for just cause did not arise out of the agreement. There, an employee was terminated by Pepsi after the collective bargaining

7

agreement expired. *Id*. at 1332. He asserted that he was terminated without just cause and Pepsi refused to submit his grievance to arbitration. *Id*. at 1332, 1334.

The court noted that the dispute did not fall under the first *Litton* category because the employee was discharged after the contract's expiration. *Id*. at 1334. As to the second *Litton* category, the Court noted that, "[g]enerally, the right to be discharged only for just cause 'is strictly a creature of the collective bargaining agreement and its life as a matter of contract does not extend beyond contract expiration.'" *Id*. at 1334 (quoting *Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1404 (8th Cir.)). As to the third *Litton* category, the court noted that the agreement did not explicitly provide that the right to be discharged only for just cause survived the agreement's expiration. *Id*. Thus, the court concluded, the employee's grievance did not arise out of the agreement. *Id*.

Here, however, there is no general rule that the right to separation pay is not a vested or accrued right as required by the second *Litton* category. In fact, in *Cincinnati Typographical Union No. 3 Local 14519 v. Gannett Satellite Inco. Network, Inc.*, 17 F.3d 906 (6th Cir. 1994), the Sixth Circuit recognized that the right to severance pay is "usually a right that accrues and vests over time, as per *Nolde Bros.*, for the longer a person works, the more pay accrues." *Id*. at 911. *See also Chicago Pneumatic Tool Co. v. Smith*, 890 F.Supp. 100, 121 (N.D.N.Y. 1995); *United Paperworks Intern. Union v. Boise Cascade*, 758 F.Supp. 954, 961 (D. Vt. 1991). Severance pay is accrued by employees "step-by-step as they work for the employer." *Cincinnati*, 17 F.3d at 911.

In *Cincinnati*, the Sixth Circuit explained that there are two basic ways to show that a right is accrued or vested. First, a right may be deemed accrued or vested under standard contract principles, through contract language or extrinsic evidence evidencing the parties' intent that the right vest. 17 F.3d at 910. Second, there are certain types of rights that are presumed to be accrued or vested "without any other evidence in a contract." *Id*. at 911. "These are rights that can be worked toward or accumulated

8

over time." *Id*. Among these accrued or vested rights, as discussed, is the right to severance pay. *Id*.

Just as was the case with the severance pay at issue in *Nolde*, the American Standard employees did accrue the right to separation pay "step-by-step" and the longer an employee worked for the company, the more separation pay he accrued. In order to have the right to separation pay at all, an employee first had to work at the plant three years. Then, as was the case with the severance pay in *Nolde Bros.*, the amount of separation pay to which each employee was entitled increased with the years of employment.

American Standard argues that the Sixth Circuit's decision in *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000 (6th Cir. 2009) is directly on point. (DE 20 at 3). In that case, the court was faced with the issue of whether the right to no-cost retiree medical benefits vested upon an employee's retirement or as soon as the worker became eligible for retirement. *Id*. at 1002. The case did not involve the issue of arbitrability. Thus, the case contains no mention of *Nolde Bros., Litton*, or any of the other cases discussed in this opinion. Nor did that case involve severance or separation pay or any other right that the Sixth Circuit has said is presumed to be vested or accrued. *Cincinnati*, 17 F.3d at 911.

The case before this Court involves a right to separation pay which is a right that is presumed to be vested or accrued. Accordingly, there is a presumption that this dispute is arbitrable even after the contract expires. The parties have pointed to no provision of the contract which would indicate a contrary intent by the parties. The presumption must be "negated expressly or by clear implication." *Litton*, 501 U.S. at 204. No such evidence exists in this case. In fact, as in *Nolde Bros.*, the parties broadly agreed to arbitrate "any dispute between the Company and any employee of the Union concerning the application, interpretation, claim of breach, or violation of this Agreement." (DE 1, Ex. A, Agreement, § 11.01).

### III. CONCLUSION.

Accordingly, the Court hereby ORDERS that American Standard's Motion to Dismiss (DE 7) is DENIED. In addition, because American Standard has responded to the Union's tendered sur-reply, the Court hereby ORDERS that the Union's Motion for Leave to File Sur-reply (DE 19) is GRANTED and the Clerk of the Court is DIRECTED to file the tendered Sur-reply in the record.

Dated this 28th day of September, 2010.

Signed By:
*Karen K. Caldwell*  KKC
United States District Judge